The fifth case on the calendar is one that we're going to decide on the briefs. Number 21-33-74, United States v. Dennis Sizz. And so we'll move to oral argument in our sixth case, which is remote. And that is number 21-20-88, Javier Mejia v. the Attorney General Merrick Garland. OK, I see one, one party, right? We're waiting. Yeah, we have Mr. Hogan. Can you hear me, Mr. Hogan? Yes, Your Honor, I can. OK, terrific. Let's wait for Mr. Thoman. Good morning, Your Honors. Good morning, Mr. Thoman. It's Judge Scudder from the courtroom. Can we can hear you? Can you hear us OK? I can hear you OK, Your Honors. And I'm so sorry my video was working this morning, but now it's telling me I can't launch the camera. Well, are you are you comfortable proceeding this way by audio? We can hear you just fine here in the courtroom. That's fine, Your Honors. And I do apologize profusely for this. I mean, it had been logged in the whole time. I've been sitting in the breakout room listening on. There's no need to apologize. These things happen. We understand. Thank you, Your Honors. I appreciate it. I'm ready to proceed if the court is all ready. OK, so we have Mr. Hogan here by video. And Mr. Thoman, why don't you go right ahead? You reserved a minute for rebuttal, it looks like. And you can proceed. That's correct. Go right ahead. Thank you, Your Honors. And may it please the court. Good morning. My name is Daniel Thoman, and I represent the petitioner in this case. Petitioner raises three issues for this court to review. First, whether the agency incorrectly found that he did not establish a sufficient nexus between the harm that he suffered in Mexico and this harm to the fears of Mexico and his religion or membership in a particular social group. Second, whether the agency incorrectly found that the government of Mexico had not or would not acquiesce to his persecution or torture. And finally, whether the agency incorrectly found that the petitioner did not establish eligibility for the non-discretionary relief that he sought. The third issue is essentially kind of wrapping up the other two. If the agency incorrectly made those two other findings, then our position is that that represents an overall failure to properly adjudicate his applications. So I'd like to start with the first issue regarding nexus. In this case, the petitioner essentially, in my opinion, established a very clear connection between his religious activity vis-a-vis the sale of religious keychains and the harm that he suffered and feared. He used to sell candy in the exact same way. He never had any issues with the Tapito Union in Mexico. Then once he began selling religious artifacts as a result of his religious conversion, that was the way that he manifested his faith. He used that as a way to preach to people as he was selling his wares. And that's when he started having problems. So can I ask you, Mr. Tolman, this is Judge Wood. Of course, Your Honor, I can see you. Sure. The question of nexus is a heavily factual question. I mean, one could look at this record and think that he doesn't really have trouble until he tells the Tapito Union members that he's not going to help them with their drug sales. You could perhaps look at this record and see these religious keychains as something sufficiently religiously connected, perhaps. I mean, the immigration judge wasn't even sure, but said, well, OK, let's suppose this is religious as opposed to social group or political view or the other criteria. But what I'm concerned about is the standard of review right now. It looks like a factual question is, you know, what kind of link is there between the sale of these keychains and the, first of all, the beatings? And then we probably have to get to whether you can tie the Mexican government to them. So how can we really second guess what the IJ and the board thought about this nexus or lack thereof? Thank you, Your Honor. I actually believe that it's a mixed question of fact and law. It is an application of the criteria for eligibility for withholding of removal and cat relief to the certain factual determinations. So the finding, they never actually made an explicit finding. The reason you had trouble was this or that. They just said you haven't shown us that there's a sufficient nexus between the religion and the harm that he suffered. So it's a question of whether the agency properly carried out its duty to balance the facts and reach a legal conclusion that the petitioner had not established sufficient nexus. So the determination is a legal one. It is based on factual assumptions. Now, the IJ did make some findings regarding the significance of some of the things that were said to the petitioner in the course of his, what we contend as persecution. For example, when he was told, you know, I thought your God was going to help you. The judge did not take that to indicate a connection to religion. But also another way that it becomes a legal question is that the immigration judge and the board overlooked some significant facts that underlie that connection, such as the involvement of the rival merchants. And that complicates things a little bit because now we have an additional motive relating to it. But essentially it was a different religious faction. They were selling their wares for their own religious side. Mr. Mr. Toman, can I back up a step earlier? In your brief, this is Judge Jackson Acumi. In your brief, you concede that you didn't exhaust the issue of his relocation, you know, his reasonable relocation in Mexico at the administrative level. Why is that not dispositive here? Thank you, Your Honor. The reason it's not is that essentially the issue of relocation turns on whose burden it is to establish the reasonableness of the relocation. If the agency had correctly found that there was a nexus between the harm that he suffered and his religion or membership in one of the two groups that he proposed, then there would have been a presumption of future harm. But you need more than nexus. I mean, you could have a nexus. I've seen cases where somebody says, yes, there's a nexus. But actually, what happened to you as a result of that linkage was simply did not rise to the level of the kind of persecution or, you know, the past persecution that would be needed for the shift and burden of proof that you're talking about. And so, you know, these cases are always difficult. But he has a couple of beatings. And once, you know, I guess he goes to the hospital and waits for five hours and then he decides, well, actually nothing's happening here. So he goes home and then there's another time where he's beaten. But if the agency thinks that those two beatings in and of themselves are not enough to show past persecution, even if you gave him the nexus, you'd still have a problem. And on top of that, you do you also have a problem linking this to either the action of the government or the government's unwillingness to take any action. Your Honor is correct that the issue of whether this rises to the level of past persecution is another requirement. But our position to to continue answering Justice or Judge Jackson Acumi's question is that if that presumption of future harm applied, then if he showed a 50 percent chance, that's not enough for him to establish that he can that is reasonable or unreasonable for him to internally relocate. But that would be enough to carry the presumption. So that error is significant. And Judge Wood, to go back to to what you're alluding to in this case, I think that it does rise to the level of persecution. If we think of what persecution actually is, he was literally pursued even after he tried to leave the area and start selling outside of the city. I think he said it was like an hour and a half away by car. They still found them. They were looking for him. So they were pursuing him. He did have the two beatings and one did apparently, in his opinion, require medical attention, which he sought. And yes, he eventually left the hospital. But the test cannot just be the level of physical harm that one suffers. The totality of what happened here, I think, rises to the level of persecution. Mr. Toman, I'm sorry. You're in good. Did you argue in your in your blue brief that there was an error committed on whether what Mr. Mejia suffered rises to the level of persecution? I didn't think you argued that. Your Honor, I did not address the issue as clearly as I should have as far as I did state that it rose to that level. But I guess I should have made it a separate point. And I apologize to the court that I failed to develop that argument. OK, so the other prong that you could that you could possibly focus on then would be forward looking, right, on whether he's going to suffer persecution. And that gets into the question of internal relocation. But then you then you circle back to Judge Jackson Acumi's observation that it doesn't look like you've you put that issue before at least the board. Correct, Your Honor, because we feel that the other two findings were incorrect. And if those two were overturned, then it warrants revisiting the issue by the agency because they didn't adequately consider it. They applied the wrong burden and making the findings also the judge overlooked completely. And by the way, the judge did posit in the alternative, even if he had shown past persecution, he still would have denied. So the judge, you know, still would have got it wrong. Considering that, I think that language is significant because if we're going to say assuming arguendo that he did suffer past persecution and then it turns out that the arguendo that he suffered past persecution should apply. And I see that my time is expiring. So very briefly, if I may just very quickly address the issue of the police government accountability acquiescence. The in this case, he was beaten within a block of a police officer right after the beating ended. He ran over to the officer, asked for help. He said, I can see my assailants. They're down the block. They're right there. Go get them. And the officer blew him off. If that isn't unwillingness to to protect when they have a duty to do so, I don't know what is. So respectfully, your honors, thank you for your time. Thanks to you. We'll turn to Mr. Hogan. Good morning. Good morning. May please the court. Brendan Hogan for the government. With respect to petitioner's counsel, he has the burden backwards in this case. The board only affirms the denial of petitioner's applications on two grounds. First, past persecution and the two beatings in this case do not satisfy that burden. He had some bumps and scrapes, but in that he was not harmed. The past persecution, failure of past persecution means, as Judge Scudder pointed out, he can only succeed on a future fear of harm. But petitioner has failed to exhaust any challenge to the relocation analysis. And he's also waived any challenge to the relocation analysis for that reason. That is an independent, dispositive finding that is fatal to his claim. All of the other issues he would like to discuss today are not relevant for that reason. On top of the fact that the board didn't reach many of the issues that petitioner's counsel wants to discuss, they did not deny based on nexus. They did not deny most of the other reasons he brings up. With respect, he's discussed everything except for the reasons the agency denied the applications in this case. And for that reason, the review petition should be denied. There's no developed argument in the briefs about the actual issues in this case. I understand his point to be that if you unwind it far enough and you find error in the past persecution finding and you find error in the nexus finding, then these downstream decisions would also have to be re-examined. You might not even need to get to future harm if you found past persecution. So that's what I think he's arguing. It is, but it's not a correct argument with all due respect to the petitioner's counsel. First, he would have for the burden to shift on the relocation analysis, he would have to address the past persecution claim, which he did not. And supporting that is the fact that he does not even address past persecution. And I guess on the past persecution claim, that's why I asked the question I did earlier to him. One of the key elements is whether he is asserting a protected ground under the statute. The immigration judge decides that it's his religious affiliation with these key chains. And so you would need to show the nexus. That's why I was asking, is that a question of fact, law, application? Is it a Las Vergas situation? You know, what are we doing? And then you'd also have to show that, you know, you're very dismissive about it, but he gets beaten badly enough to go to the emergency room. He's ignored there. So he goes home. I'm not sure that we can infer that that meant they were trivial injuries. It just means nobody was paying attention. And he also gets beat with a gun the second time and he's told they were going to kill him next time. So maybe, maybe that is more serious. No, Your Honor. Under this court's precedent in Murray and also Oriana Arias, it was similar treatment for the petitioners. He suffered or experienced two beatings, six months apart. But we don't have a two beating rule. I mean, it depends on all of the circumstances. No, Your Honor. But the full sum of the evidence in this case is two pages of testimony. He submitted nothing else. And he said he was beaten twice. He had bumps and scrapes. He took an unspecified medicine and he has no lingering effects or injuries from that experience. And that is dispositive of his claim. Petitioner wants to talk about nexus. The board did not address that under this court's precedent in Mesa and the Supreme Court's precedent in Dagomazbed. The board doesn't have to address it because by failing to show past persecution and failing to show location, it's fatal to his applications. There's nothing left for the board to address. Those are the reasons the petition for review should be denied. And respectfully, Petitioner's counsel doesn't address the actual issues that are present in this case. Does the panel have any additional questions? No. No, I know that's difficult doing it remotely, Mr. Hogan. There's no further questions from here in the courtroom. So we thank you unless you have a concluding remark you want to make. Just for all the reasons previously discussed, that because petition did not show past persecution and has not even dealt to exhaust any challenge to the relocation analysis, the petition for review should be denied. Thank you very much. Very well. Mr. Toman, is there a parting thought you'd like to leave us with in rebuttal? Thank you so much, Your Honors. Essentially, I feel that the harm that was shown is sufficient to rise to the level. It is discussed briefly, and as I said, not sufficiently there in the last section of the brief citing the regulation defining torture. The threats of death carry a clear implication that the next time they see him, they will kill him. And that can qualify. So I think that it does rise to that level. And in light of the fact that he established a clear nexus between religion as well as the fact that the judge completely ignored the two proposed particular social groups, there's no discussion of those. Those issues warrant remand so that the agency can properly apply the law to this case. Thank you so much for your time. Okay. Thanks to both counsel. We'll take the sixth case under advisement as well, and the court will stand in recess until tomorrow morning.